NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2652
_____

TIFFANY TURNER,
Appellant

v.

PHILADELPHIA FIGHT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:24-cv-04294)
District Judge: Honorable Gail A. Weilheimer
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 12, 2026

Before: HARDIMAN, BOVE and FISHER, *Circuit Judges*.

(Filed: June 29, 2026)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

Tiffany Turner filed a discrimination claim under 42 U.S.C. § 1981 against her

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

former employer, Philadelphia FIGHT Community Health Centers, which provides primary care and education to people living with, and those at high risk of contracting, HIV/AIDS. She alleged that race motivated her termination. The District Court granted summary judgment for FIGHT. We will affirm.[1]

The "familiar burden-shifting framework the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*" governs Turner's discrimination claim.[2] First, Turner must establish a *prima facie* case of discrimination.[3] If she succeeds, the burden shifts to FIGHT "to articulate some legitimate, nondiscriminatory reason for" Turner's termination.[4] If FIGHT satisfies this burden, Turner must "prove by a preponderance of the evidence that the legitimate reasons offered by [FIGHT] were not its true reasons, but were a pretext for discrimination."[5] Turner's claim fails because, even if she could establish a *prima facie* case of discrimination, she does not present evidence from which a reasonable factfinder could conclude that FIGHT's legitimate, non-discriminatory reasons for her termination were pretextual.

---

[1] The District Court exercised jurisdiction under 28 U.S.C. § 1331 (federal question). We exercise jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). We review summary judgment orders *de novo*. *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 395 n.17 (3d Cir. 2016).

[2] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[3] *Id.*

[4] *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).

[5] *Id.*

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."[6] "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact."[7] In an employment discrimination case like this one, Turner must proffer "admissible evidence . . . that [FIGHT]'s articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason'"[8] or point "to evidence in the record which 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of'" her termination.[9] Turner argues that a fact finder could infer a discriminatory motivation for her termination based on "[a] number of facts."[10] However, Turner does not present evidence to support her assertion.

Turner joined FIGHT in December 2023 as Director of Nursing. In that role, she supervised nurses across several clinics. In February 2024, Dr. Jay Kostman became

---

[6] Fed. R. Civ. P. 56(a).

[7] *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021).

[8] *Jones*, 198 F.3d at 413 (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997)).

[9] *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[10] Appellant's Br. 17. The section of Turner's brief dedicated to this last *McDonnell Douglas* prong includes only one sentence, which states that her arguments on the *prima facie* prong apply equally to the pretext prong. *Id.* at 24. This is close to forfeiting the argument. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir.), as amended (May 5, 2006) ("[P]assing and conclusory statements [in a brief] do not preserve an issue for appeal."). Nonetheless, we address her *prima facie* arguments as if they are pretext arguments.

FIGHT's Chief Medical Officer and Turner's direct supervisor. Shortly thereafter, Dr. Leah Scherzer, the Medical Director of one of the clinics, expressed concern to Kostman that Turner's unwillingness to collaborate with clinical leadership when making staffing decisions created bottlenecks and could lead to safety problems. After Kostman restructured the clinics so that Turner no longer supervised staff at Scherzer's clinic, Turner protested the decision. Then, Turner sent an e-mail to the nursing staff at Scherzer's clinic that incorrectly identified Scherzer as the person who directed the restructuring.

Kostman was disturbed by Turner's decision not to include him when drafting the e-mail, and he had to call an emergency meeting with the clinic's staff to address the fallout. When FIGHT's senior management later discussed the restructuring decision and the subsequent e-mail incident, Director of Human Resources Catrina Peeples described Turner's tenure as "a pattern of divisive leadership, misrepresentation, and mistreatment of long-standing staff."[11] In April, two FIGHT employees resigned, citing various issues with Turner's management style. The next day, Kostman terminated Turner's employment because "she was not a good fit for the position based on interactions that she had . . . and continued to have with other staff."[12] Kostman said the termination was "based on events that occurred since [he] became her supervisor."[13]

---

[11] App. 374a.
[12] App. 303a.
[13] *Id.*

Turner makes much of the fact that FIGHT's medical leadership team did not include a black person and that, at the time of her hiring, some members of the team expressed concern about her qualifications. But nothing in the record shows that the decision-maker, Kostman, ever considered Turner's race. In fact, the record demonstrates only Kostman's consistent concern about Turner's ability to effectively collaborate and communicate with clinic leadership and staff. Although Turner submitted three formal complaints while employed at FIGHT, only one of those complaints alleged discrimination of any kind and, after an investigation, outside counsel concluded that Turner's allegations were "unsubstantiated."[14] Turner offered deposition testimony that she could not "specify what the discrimination [was]."[15] Indeed, Turner admits that "[i]t is apparent from the evidence that [clinic leadership] objected to Turner's decisions and other actions . . . principally because Turner did not consult with them first," not because of her race.[16]

The record shows that there is not a "reasonable disagreement" over any "outcome-determinative fact."[17] Turner does not "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [FIGHT]'s proffered

---

[14] App. 45a; App. 366a.
[15] App. 167a.
[16] Appellant's Br. 19.
[17] *Energy Future Holdings*, 990 F.3d at 737.

legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence."[18] Therefore, we will affirm.

---

[18] *Jones*, 198 F.3d at 413 (quoting *Keller*, 130 F.3d at 1108–09).